IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

| | |
|---|---|
| AMERICAN GUARDIAN WARRANTY SERVICES, INC., an Illinois Corporation, AMERICAN GUARDIAN FUNDING CORPORATION, an Illinois Corporation, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 16-cv-11407 ) |
| JCR-WESLEY CHAPEL, LLC, a Florida corporation, JESUS ROSARIO, and CYNTHIA ROSARIO, | ) ) ) ) |
| Defendants. | ) |

## AMENDED COMPLAINT

Now Comes, American Guardian Warranty Services, Inc. and American Guardian Funding Corporation, by and through their attorneys, KONICEK & DILLON, P.C., and for their amended complaint against JCR-Wesley Chapel, LLC, Jesus Rosario, and Cynthia Rosario, allege as follows:

### FACTS COMMON TO ALL COUNTS

1. American Guardian Warranty Services, Inc. ("American Guardian") is an Illinois corporation with its principal place of business in Warrenville, Illinois.

2. American Guardian is an administrator and obligor of vehicle service contracts, limited warranties, guaranteed asset protection waivers, tire and wheel contracts, and appearance protection contracts ("American Guardian Contract(s)").

3. An American Guardian Contract is a contract between American Guardian and a vehicle owner whereby American Guardian agrees to pay the cost of repair, or other loss, to the owner's vehicle as outlined in the contract.

4. American Guardian Funding Corporation ("American Guardian Funding") is an Illinois corporation with its principal place of business in Warrenville, Illinois.

5. American Guardian Funding lends money to automobile dealerships which sell American Guardian Contracts, provided the dealership meets certain minimum requirements.

6. JCR-Wesley Chapel, LLC ("Wesley Chapel") is a Florida limited liability company, with its principal place of business in Wesley Chapel, Florida, and is in the business of selling vehicles.

7. Wesley Chapel is owned by Jesus Rosario.

8. Jesus Rosario's spouse is Cynthia Rosario.

9. American Guardian and Wesley Chapel entered into a Dealer Agreement dated November 7, 2013. A copy of the Dealer Agreement is attached hereto and incorporated by reference herein as Exhibit "A".

10. Under the terms of the Dealer Agreement, Wesley Chapel submits to the personal jurisdiction of any state court having its situs in DuPage County, Illinois.

11. American Guardian has what is referred to as a Dealer Funding Program.

12. The Dealer Funding Program is in essence an arrangement whereby American Guardian Funding loans money to vehicle dealerships in exchange for a promise from the dealership to: (1) repay the loan; (2) sell "exclusively" American Guardian Service Contracts,

that is, 95% of all service contracts sold by the dealership; and (3) meet minimum production requirements.

13. The essential component of the Funding Program is the Production Agreement whereby the dealership agrees for 60 months to exclusively sell American Guardian Contracts.

14. On or around December 1, 2013, Wesley Chapel participated in American Guardian's Dealer Funding Program and American Guardian Funding loaned Wesley Chapel $300,000.00.

15. The loan was guaranteed by Jesus Rosario and Cynthia Rosario.

16. As part of the Funding Program and consideration for the loan, contemporaneous with signing the Loan Agreement, Wesley Chapel entered into a Production Agreement requiring it to sell exclusively (95%) American Guardian Service Contracts for sixty (60) months and to meet minimum production requirements.

17. In April of 2014, Wesley Chapel contacted American Guardian about a potential conflict it was having with Nissan North America, Inc. ("Nissan") regarding an outstanding financial commitment it owed for failure to meet certain production minimums with Nissan.

18. Wesley Chapel represented to American Guardian that Wesley Chapel owed Nissan nearly $200,000.00 and could not meet its obligation.

19. To assist Wesley Chapel, American Guardian Funding provided a new loan to Wesley Chapel in the principal amount of $500,000.00. As part of this second loan agreement, Wesley Chapel entered into a new Production Agreement.

20. In early November 2014, Wesley Chapel again approached American Guardian about borrowing more money and, on or about November 14, 2014, American Guardian

Funding and Wesley Chapel entered into their third Loan Agreement bringing the principal balance to $1,030,601.15 and American Guardian and Wesley Chapel entered into their third Production Agreement.

21. This third loan was guaranteed by Jesus Rosario, Cynthia Rosario, and the general manager of Wesley Chapel.

22. In December of 2015, Wesley Chapel approached American Guardian a fourth time asking for additional accommodations.

23. Wesley Chapel represented to American Guardian that it and Jesus Rosario were having employment related issues with Wesley Chapel's general manager and would like to part ways. However, the general manager's Guaranty, executed in November of 2014, was an obstacle to his separation.

24. Despite the increased risk to American Guardian Funding, American Guardian Funding agreed to Wesley Chapel's request to release the general manager as a guarantor.

25. As consideration for removing the general manager as a guarantor, on December 15, 2015, Wesley Chapel signed a new Promissory Note with American Guardian Funding for $716,357.52, payable in 60 monthly payments of principal and interest in the amount of $13,273.90, beginning January 15, 2016. A copy of the Promissory Note is attached hereto as Exhibit "B".

26. On December 15, 2015, Jesus Rosario and Cynthia Rosario each signed a Commercial Guaranty by which Jesus Rosario and Cynthia Rosario absolutely and unconditionally guaranteed and promised to pay to American Guardian Funding Wesley Chapel's indebtedness of $716,353.52. A copy of Jesus Rosario's Commercial Guaranty is

attached hereto and incorporated by reference herein as Exhibit "C". A copy of Cynthia Rosario's Commercial Guaranty is attached hereto and incorporated by reference herein as Exhibit "D".

27. On or about December 15, 2015, as consideration for the loan, Exhibit "B", Wesley Chapel and American Guardian entered into a Dealer Agreement Funding Addendum/Production Agreement ("Production Agreement"). A copy of the Production Agreement is attached hereto and incorporated by reference herein as Exhibit "E".

## COUNT I
## BREACH OF DEALER AGREEMENT

Paragraphs 1 through 27 are incorporated herein

28. Pursuant to the Dealer Agreement, Exhibit "A", Wesley Chapel sold American Guardian Contracts to its customers.

29. Pursuant to the Dealer Agreement, Wesley Chapel could sell American Guardian Contracts for any amount provided the sales price was not in violation of any state law.

30. Pursuant to the Dealer Agreement, Wesley Chapel was to remit to American Guardian the "Net Dealer Cost" for the American Guardian Contracts sold and would keep the difference between what it sold the contract for and the Net Dealer Cost as its profit (the "dealer's fee").

31. Wesley Chapel has ceased selling American Guardian Contracts.

32. As of November 1, 2016, Wesley Chapel owes American Guardian $207,888.00 in Net Dealer Costs for contracts it sold and on which it has been paid, but has not remitted to American Guardian the Net Dealer Cost.

33. American Guardian has made demand on Wesley Chapel for the $207,888.00.

34. Wesley Chapel has failed and refused to pay.

35. American Guardian has done everything required of it pursuant to the Dealer Agreement, including honoring contracts on which it has not been paid.

WHEREFORE, American Guardian Warranty Services, Inc. prays for judgment in its favor and against JCR-Wesley Chapel, LLC in an amount in excess of the jurisdictional limit.

## COUNT II
## BREACH OF LOAN AGREEMENT

1-27. American Guardian Funding hereby incorporates paragraphs 1 through 27 of Count I as and for paragraphs 1 through 27 of this Count II.

28. Pursuant to the terms of the Promissory Note, Exhibit "B", any breach or termination of the Dealer Agreement, Exhibit "A", or of the Production Agreement, Exhibit "E", constitutes an event of default of the Promissory Note.

29. Wesley Chapel is in breach of the Dealer Agreement and is in breach of the Production Agreement.

30. Pursuant to the terms of the Promissory Note, upon default, American Guardian Funding may declare that the entire unpaid principal balance and all accrued interest is immediately due.

31. As a result of Wesley Chapel's breach, American Guardian Funding has declared the entire unpaid principal balance and accrued interest due.

32. As of November 1, 2016, there is due and owing from Wesley Chapel to American Guardian Funding on the Promissory Note.

33. Pursuant to the terms of the Promissory Note, Wesley Chapel is responsible for all of American Guardian Funding's attorney fees and expenses incurred to collect the Promissory Note.

WHEREFORE, American Guardian Funding Corporation prays for judgment in its favor and against JCR-Wesley Chapel, LLC in an amount in excess of the jurisdictional limit.

## COUNT III
### BREACH OF GUARANTY AS TO JESUS ROSARIO

1-33. American Guardian Funding hereby incorporates paragraphs 1 through 33 of Count II as and for paragraphs 1 through 33 of this Count III.

34. Wesley Chapel is indebted to American Guardian Funding and therefore Jesus Rosario is indebted to American Guardian Funding.

35. Pursuant to the terms of his Guaranty, Jesus Rosario submits to the personal jurisdiction of any state court having its situs in DuPage County, Illinois.

36. Pursuant to the terms of his Guaranty, Jesus Rosario guaranteed to pay American Guardian Funding the attorney fees and expenses incurred in connection with the enforcement of his Guaranty.

WHEREFORE, American Guardian Funding Corporation prays for judgment in its favor and against Jesus Rosario in an amount in excess of the jurisdictional amount.

## COUNT IV
### BREACH OF GUARANTY AS TO CYNTHIA ROSARIO

1-33. American Guardian Funding hereby incorporates paragraphs 1 through 33 of Count II as and for paragraphs 1 through 33 of this Count IV.

34. Wesley Chapel is indebted to American Guardian Funding in and therefore Cynthia Rosario is indebted to American Guardian Funding.

35. Pursuant to the terms of her Guaranty, Cynthia Rosario submits to the personal jurisdiction of any state court having its situs in DuPage County, Illinois.

36. Pursuant to the terms of her Guaranty, Cynthia Rosario guaranteed to pay American Guardian Funding the attorney fees and expenses incurred in connection with the enforcement of her Guaranty.

WHEREFORE, American Guardian Funding Corporation prays for judgment in its favor and against Cynthia Rosario in an amount in excess of the jurisdictional amount.

## COUNT V
## BREACH OF PRODUCTION AGREEMENT

1-27. American Guardian hereby incorporates paragraphs 1 through 27 of Count I as and for paragraphs 1 through 27 of this Count V.

28. Pursuant to the Production Agreement, Exhibit "E", for a period of sixty (60) months commencing December 15, 2015, Wesley Chapel agreed that 95% of all service contracts it sold would be American Guardian Service Contracts.

29. Pursuant to the Production Agreement, for the 60 month period, Wesley Chapel agreed to remit monthly to American Guardian, at a minimum, the following number of American Guardian Contracts: 85 Vehicle Service Contracts, 80 Guaranteed Asset Protection Waivers, 30 Tire and Wheel Contracts, 160 Lifetime Vehicle Service Contracts, and 100 EcoPro Appearance Protection Contracts.

30. In October of 2016, Wesley Chapel ceased selling American Guardian Contracts, and thus is in breach of the Production Agreement.

31. Had Wesley Chapel met its minimum production requirement, it would have paid American Guardian $9,939,212.00 in Net Dealer Costs.

32. Based on Wesley Chapel's breach of the Production Agreement, American Guardian has suffered damages in the amount no less than $9,939,212.00.

33. American Guardian has done everything required of it pursuant to the Production Agreement.

WHEREFORE, American Guardian Warranty Services, Inc. prays for judgment against JCR-Wesley Chapel, LLC in an amount in excess of the jurisdictional minimum.

## COUNT VI
## INJUNCTIVE RELIEF

1-33. American Guardian hereby incorporates paragraphs 1 through 33 as and for paragraphs 1-33 of Count VI

34. The exclusivity clause of the Production Agreement provides:

> Exclusivity: For a period of sixty (60) months from the Effective Date, Dealer agrees to provide substantially all vehicle service contracts, limited warranty, guaranteed asset protection (GAP), certified and ancillary product production through American Guardian Warranty Services, Inc. or its approved product providers. For purposes of this provision, substantially all shall mean ninety five percent (95%) of vehicle service contract, limited warranty, guaranteed asset protection (GAP), certified and ancillary product business produced by Dealer.

35. Wesley Chapel is not selling American Guardian's product.

36. Wesley Chapel is currently selling at a minimum vehicle service contracts and limited warranties of a direct competitor of American Guardian.

37. American Guardian is suffering irreparable harm as a result of Wesley Chapel's breach of the exclusivity clause and sale of its competitor's products.

38. The contract that includes the exclusivity clause was negotiated in good faith and American Guardian has fulfilled its obligations under the Production Agreement.

39. Wesley Chapel is in breach of the exclusivity clause by virtue of their failure to sell American Guardian products and the sale of a competitor's product.

40. There is a likelihood that American Guardian will succeed on the merits of this claim.

WHEREFORE, American Guardian Warranty Services, Inc. prays this Court enter an Order enjoining JCR-Wesley Chapel, LLC from violating the exclusivity clause and from selling competitor's products.

    Respectfully Submitted,
    AMERICAN GUARDIAN WARRANTY
    SERVICES, INC. and AMERICAN GUARDIAN
    FUNDING CORPORATION,

    /a/ Amir R. Tahmassebi
    Attorney for the Plaintiffs

Daniel F. Konicek (6205408)
Amir R. Tahmassebi (6287787)
KONICEK & DILLON, P.C.
21 W. State St.
Geneva, IL  60134
630.262.9655