IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN GUARDIAN WARRANTY
SERVICES, INC., and AMERICAN
GUARDIAN FUNDING CORPORATION,

              Plaintiffs,        Case No. 16 C 11407

        v.            Judge Harry D. Leinenweber

JCR-WESLEY CHAPEL, LLC;
JESUS ROSARIO; and CYNTHIA
ROSARIO,

              Defendants.

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Defendant JCR-Wesley Chapel ("Wesley Chapel") is a car dealership owned by Defendants Jesus and Cynthia Rosario. American Guardian Warranty Services, Inc., is an administrator and obligor of vehicle service contracts, warranties, and related undertakings, and American Guardian Funding Corporation (together with American Guardian Warranty Services, the "Plaintiffs") lends money to automobile dealerships which sell American Guardian products.

On November 7, 2013, Wesley Chapel entered into a Dealer Agreement whereby Plaintiffs authorized Wesley Chapel to market, offer, and sell Plaintiffs' warranties, extended service

contracts, and other similar programs to prospective automobile purchasers at the Wesley Chapel dealership for both new and used vehicles. The development of trade names, promotional materials, contracts, forms, and procedures for the programs were provided by Plaintiffs to Wesley Chapel. Wesley Chapel was permitted to retain as income any amounts paid by its customers over and above the amount charged by Plaintiffs.

Shortly after they signed the Dealer Agreement, Defendants also decided to enter into a loan program with Plaintiffs. On December 1, 2013, an Addendum Agreement was executed whereby Plaintiffs agreed to loan Defendants $300,000.00 for five years, and in return Defendants agreed not to terminate the Dealer Agreement for five years and further that during this five-year period they would market, offer, and sell only Plaintiffs' service programs to its customers. On April 21, 2014, Defendants requested and received another loan from Plaintiffs, this time in the amount of $500,000.00. The terms of the loan were similar: the loan was for five years and Defendants agreed not to terminate the Dealer Agreement and to market Plaintiffs' products exclusively for those five years (or until April 2019). On November 14, 2014, Defendants requested and received a third loan from Plaintiffs, this time in the amount of $1,030,601.15, under the same terms (extending the restriction on termination

to November 14, 2019).   Finally, on December 15, 2015, Defendants requested a fourth loan from Plaintiffs in the amount of $716,357.52 under similar terms that finally extended the termination restriction to December 15, 2020.

The Dealer Agreement contained a termination clause that gave either party the right to terminate with or without cause upon thirty (30) days' prior notice.   However, the four Loan Agreements styled as "Dealer Addendum Agreement[s]" removed the dealers', *i.e.,* the Defendants, right to cancel under the Dealer Agreement's termination clause.

In 2016, less than one year after executing the 4th Addendum Agreement and without notifying Plaintiffs, Defendants entered negotiations with one of Plaintiffs' competitors, EasyCare/APO.   Those negotiations concluded with a contract and a funding deal.   In September 2016, Defendants stopped performing under the Dealer Agreement and sought to pay off the loans early.   As a result, Plaintiffs filed suit.   Now, Defendants move for partial judgment on the pleadings, seeking a declaration that the agreements are unconscionable. Specifically, Defendants move for judgment on the pleadings on Counts I and V of the Amended Complaint, both of which allege claims for breach of contract.

## II.  POSITIONS OF THE PARTIES

Defendants claim that they are entitled to judgment on the pleadings on Counts I and V because the contractual provisions in the addenda to the Dealer Contract prohibiting Defendants from canceling are substantively unconscionable.  According to Defendants, the standard in a commercial setting is whether the terms are commercially unreasonable.  *ChampionsWorld, LLC v. U.S. Soccer Federation*, 726 F. Supp. 2d 961, 973-74 (N.D. Ill. 2010).  A contract is commercially unreasonable when the terms are "totally one-sided or harsh."  *Gleike Taxi Inc. v. Challenger CAB, LLC*, No. 13 CV 6715, 2016 WL 1450048, at *5 (N.D. Ill. Apr. 13, 2016).  Defendants argue that the non-termination provision shields Plaintiffs from liability while barring the Defendants from terminating.  They explain that in "practical terms," the complained-of provision requires Defendants to perform their obligations by selling exclusively Plaintiffs' warranties and remitting payments for five full years, even while Plaintiffs may choose to perform or not perform under the Dealer Agreement without repercussion.

Plaintiffs argue in response that a court should sparingly exercise the power to render a private contract between two sophisticated entities void as illegal or against public policy, *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 644-45 (Ill. 2011),

and here there is no dispute that Plaintiffs and Defendants are sophisticated businesses. Indications of substantive unconscionability exist where the contract terms are so one-sided as "to oppress or unfairly surprise an innocent party, [to create] an overall imbalance in the obligations and rights imposed by the bargain, [or to impose] significant cost-price disparity," *id.* at 656*,* none of which is present here. "Mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations." *Streams Sports Club, Ltd v. Richmond*, 457 N.E.2d 1226, 1232 (Ill. 1983). Plaintiffs therefore contend that the Addenda are fully supported by consideration and are not unconscionable.

### III.  <u>DISCUSSION</u>

Whether a contract is unconscionable is a question of law for the court, and unconscionability exists only where the terms of a contract are "totally one-sided or harsh." *Hanover Ins. Co. v. N. Building Co.*, 751 F.3d 788, 794 (7th Cir. 2014). Here, the sole claim of unconscionability is based on the lack of ability of Defendants to terminate the contract prior to the conclusion of the five year loan term. As Plaintiffs point out, courts are reluctant to use unconscionability to re-write the terms of contracts into which sophisticated businessmen enter. Defendants' citation to *Gleike* falls short of the mark of

showing unconscionability under the facts of this case. In *Gleike,* the defendants were taxi owners primarily of Eritrean origin and were not commercially sophisticated. 2016 WL 1450048, at *2, 5. Due to a regulatory scheme, those defendants were faced with a licensing deadline that would have put them out of business if they did not deal with the plaintiff, Gleike. *Id.* at *2-3. The district court held that under the circumstances, the defendants were denied any "meaningful choice" other than to deal with the plaintiff and, as a result, received a one-sided agreement that effectively shielded Gleike from liability for any breach of contract. *Id.* at *5. The Court also found the termination provisions to be grossly one-sided. The Court also found the termination provisions to be grossly one-sided.

However in this case we have two sophisticated businesses dealing with one another. They entered into a Dealers Agreement that Defendants do not find unconscionable. The termination provisions are the same for both parties. Shortly after entering into this agreement, Defendants decided that they wished to borrow money from Plaintiffs. Plaintiffs agreed to loan Defendants substantial sums, but required a change in Defendants' termination rights. The new agreements say that Defendants may not terminate the Dealer Agreement until the due

date of the loans, which turns out to be in 2020, five years from the date of the final loan. After the first modification, Defendants requested that Plaintiffs loan them substantial sums on three additional occasions, which under each new addendum extended both the due date of the new loan and the termination date for five years from the date of each new loan. Plaintiffs agreed to loan the money to Defendants, and Defendants agreed to pay it back and to sell Plaintiffs' products exclusively. It is not unreasonable, and certainly not unconscionable, for Plaintiffs to require, as consideration for a loan not due to be repaid for five years that Defendants continue to sell Plaintiffs' products for that period of time. In negotiating these loans, Defendants could have demanded either that they be allowed to retain their original termination rights upon repayment or some other less onerous provision for termination, but they did not. Defendants do not allege that they had no recourse but to borrow from Plaintiffs (which might amount to a claim of procedural unconscionability), which distinguishes this case from *Gleike*, where the defendants were up against time constraints which effectively prevented them from dealing with anyone but the plaintiff. 2016 WL 1450048, at *2-3. If Defendants wanted to retain their mutual termination right they could have gone to a bank or other lender to borrow the money

and refrain from dealing with the Plaintiffs. They certainly have not shown that they were deprived of any meaningful choice in giving up their termination rights.

Defendants also argue that their inability to terminate the contract insulates Plaintiffs from liability for breach of contract. The Court does not see how this is the case, as the provisions of the Dealer Agreement, other than the termination clause, are retained. Under paragraph V of the Dealer Agreement, Plaintiffs have five obligations due Defendants, all of which are breachable and could result in legal actions. For example, if Plaintiffs unilaterally refused or else became unable to supply Defendants with insurance policies issued by a state-approved insurance company indemnifying the Defendants, as required by paragraph V.I of the Dealer Agreement, such a breach could lead to a lawsuit and contract termination like any other contractual breach. A contract may be rescinded under Illinois law where one party has materially breached the contract, such as failing to perform an element of the agreement without which the contract would not have been made. *Stowe v. Balsier*, No. 88 C 4929, 1989 WL 32932, at *3 (N.D. Ill. Apr. 4, 1989). The agreement to loan money is clearly a separate undertaking, and constitutes substantial consideration to support the change in Defendants' termination rights.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, because the contract is clearly not unconscionable and is supported by adequate consideration, Defendants' Motion for Judgment on the Pleadings on Counts I and V (ECF No. 79) is denied.

**IT IS SO ORDERED.**

_____
            Harry D. Leinenweber, Judge
            United States District Court

Dated: 6/5/2018